Andy Miri 234328
Law Offices of Andy Miri
2973 Harbor Blvd., #162
Costa Mesa, CA 92626
(949) 702-4005
andymiriesq@gmail.com

Attorneys for Petitioner

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LOPEZ GOMEZ,<br>Immigration File No. 246-062-073<br><br>Petitioner,<br><br>v.<br><br>Todd M. Lyons, Acting Director of U.S. Customs and Border Protection; Eric Pinhero, Warden of Adelanto ICE Processing Center; MW Mullin, DHS Secretary; Todd Blanche, U.S. Attorney General<br><br>Respondents. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

1. Petitioner JOSE LOPEZ GOMEZ is in the physical custody of Respondents at the Adelanto Detention Facility in Adelanto, California. He was arrested on 8/7/2026 by ICE and now faces unlawful detention because the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) have concluded Petitioner is subject to mandatory detention.

2. Petitioner is charged with, inter alia, having entered the United States without inspection. 8 U.S.C. § 1182(a)(6)(A)(i).

3. Based on this allegation in Petitioner's removal proceeding, DHS denied Petitioner release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without inspection—to be an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) and therefore subject to mandatory detention.

4. Petitioner sought a bond redetermination hearing before an immigration judge filing his said petition on February 4, 2026 (IJ), but the IJ denied bond due to lack of jurisdiction. The IJ based this decision on the same legal analysis. Indeed, the DHS policy states it was issued "in coordination with the Department of Justice (DOJ)." The IJ concluded that it had no jurisdiction to allow the Petitioner on bond pursuant to Section 235(b) of the INA.

5. Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

6. Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

7. Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be released unless Respondents provide a bond hearing under § 1226(a) well within their jurisdiction as outlined below.

## JURISDICTION

8. Petitioner is in the physical custody of Respondents. Petitioner is detained at the Adelanto Detention Facility in Adelanto, California.

9. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

10. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

11. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493- 500 (1973), venue lies in the United States District Court for the Eastern District of California, the judicial district in which the Petitioner is currently detained.

12. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of California.

## REQUIREMENTS OF 28 U.S.C. § 2243

13. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

14. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**PARTIES**

15. Petitioner JOSE LOPEZ GOMEZ is a citizen of HONDURAS who has been in immigration detention since his arrest. After arresting Petitioner in Los Angeles, ICE did not set bond and Petitioner requested review of his custody by an IJ. Petitioner has resided in the United States since October of 2021.

16. Respondent Todd M. Lyons is the Acting Director of the Adelanto Field Office of ICE's Enforcement and Removal Operations division. As such, Todd M. Lyons is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

17. Respondent MW Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention and has ultimate custodial authority over Petitioner and is sued in her official capacity.

18. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

19. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in her official capacity.

20. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

21. Respondent Todd M. Lyons is employed by the Adelanto Field Office as Acting Director of the facility where Petitioner is detained. The Warden has immediate physical custody of Petitioner. The Acting Director is sued in his official capacity.

22. Respondent Eric Pinhero is the warden of the facility in Adelanto California.

**LEGAL FRAMEWORK**

23. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

24. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

25. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

26. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

27. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

28. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

29. Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens;

Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

30. Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

31. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

32. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered the United States without inspection shall now be deemed "applicants for admission" under 8 U.S.C. § 1225, and therefore are subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

33. On a May 22, 2025, an unpublished decision from the Board of Immigration Appeals (BIA), EOIR adopted this same position.[2] That decision holds that all noncitizens who entered the United States without admission or parole are considered applicants for admission and are ineligible for immigration judge bond hearings.

34. ICE and EOIR have adopted this position even though federal courts have rejected this exact conclusion. For example, after IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here, the U.S. District Court in the Western District of Washington found that such a reading of the INA

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.
[2] *Available at* https://nwirp.org/our-work/impact-litigation/assets/vazquez/59-1%20ex%20A%20decision.pdf.

is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, --- F. Supp. 3d --- 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025); *see also Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025) (granting habeas petition based on same conclusion).

35. DHS's and DOJ's interpretation is in conflict to the INA. As the *Rodriguez Vazquez* court explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

36. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

37. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies. *Rodriguez Vazquez*, 2025 WL 1193850, at *12 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)).

38. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

39. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

40. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

**FACTS**

41. Since August, 2021, Petitioner has worked at various jobs, paying his taxes and have not arrested for any reason.

42. On August 7, 2026, Petitioner was arrested when he was working and taking a break to eat his lunch. When questioned by roving ICE he cooperated truthfully. Petitioner is now detained at the Adelanto Detention Facility.

43. DHS placed Petitioner in removal proceedings before the immigration court pursuant to 8 U.S.C. § 1229a. ICE has charged Petitioner with, *inter alia*, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.

44. Petitioner and his wife and children have resided with his family in Los Angeles since arriving in the United States and has no record of any involvement with law enforcement or arrest. Petitioner is neither a flight risk nor a danger to the community.

45. Following Petitioner's arrest and transfer to Adelanto Detention Facility, ICE issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be released on other conditions.

46. Petitioner subsequently requested a bond redetermination hearing before an IJ.

47. Thus immigration court IJ issued a decision that the court lacked jurisdiction to conduct a bond redetermination hearing because Petitioner was an applicant for admission under § 1225(b)(2)(A).

48. As a result, Petitioner remains in detention. Without relief from this court, He may face the prospect of months, or even years, in immigration custody, separated from her family and community.

49. Any appeal to the BIA is futile. DHS's new policy was issued "in coordination with DOJ," which oversees the immigration courts. Further, as noted, the most recent unpublished BIA decision on this issue held that persons like Petitioner are subject to mandatory detention as applicants for

admission. Finally, in the *Rodriguez Vazquez* litigation, where EOIR and the Attorney General are defendants, DOJ has affirmed its position that individuals like Petitioner are applicants for admission and subject to detention under § 1225(b)(2)(A). *See* Mot. to Dismiss, *Rodriguez Vazquez v. Bostock*, No. 3:25-CV-05240-TMC (W.D. Wash. June 6, 2025), Dkt. 49 at 27–31.

**NINTH CIRCUIT PRECEDENT RECOGNIZES CONSTITUTIONAL LIMITS ON IMMIGRATION DETENTION**

50. Ninth Circuit precedent consistently emphasizes that immigration detention is subject to meaningful constitutional constraints.
51. In *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), rev'd on statutory grounds sub nom. *Jennings v. Rodriguez*, the Ninth Circuit held that prolonged detention without individualized review raises serious due process concerns. Although *Jennings* rejected the statutory interpretation adopted in *Rodriguez*, it did not disturb the underlying constitutional analysis, which remains instructive in evaluating due process requirements.
52. More recently, the Ninth Circuit has reaffirmed that civil immigration detention must comport with fundamental due process principles and cannot be arbitrary or indefinite. See, e.g., *Aleman Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020), rev'd on other grounds sub nom. *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) (recognizing availability of constitutional challenges to detention practices); *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011) (holding that due process requires procedural protections in immigration bond proceedings, including a neutral decisionmaker and a record sufficient for review).
53. These authorities collectively underscore that detention decisions must be accompanied by meaningful procedural safeguards to satisfy the Fifth Amendment.

**THE GOVERNMENT BEARS THE BURDEN OF PROOF BY CLEAR AND CONVINCING EVIDENCE**

54. Even where detention authority exists, due process requires that the government justify continued civil detention through fair procedures. The Ninth Circuit has held that in immigration bond

proceedings, the government bears the burden to prove by clear and convincing evidence that continued detention is justified. See *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

55. The allocation of the burden to DHS is a critical procedural safeguard under the Fifth Amendment. Because immigration detention is civil in nature and implicates a fundamental liberty interest, the clear-and-convincing-evidence standard is necessary to minimize the risk of erroneous deprivation. See *Addington v. Texas*, 441 U.S. 418, 431–33 (1979). An individualized bond hearing without placing the burden on DHS would fail to provide the meaningful review required by due process.

56. Accordingly, any custody determination in this matter must require DHS to demonstrate, by clear and convincing evidence, that Respondent presents a flight risk or danger to the community sufficient to justify continued detention.

**NINTH CIRCUIT PROLONGED DETENTION FACTORS FAVOR AN INDIVIDUALIZED HEARING**

57. Courts within the Ninth Circuit evaluate the constitutionality of prolonged immigration detention by examining several non-exclusive factors, including: (1) the total length of detention; (2) the reasons for delay, including whether the government or the noncitizen is responsible; and (3) the likelihood that removal proceedings will conclude in the reasonably foreseeable future. See, e.g., *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015); *Singh v. Holder*, 638 F.3d at 1203.

58. First, as detention length increases, the justification for categorical detention weakens and the detainee's liberty interest correspondingly strengthens. Prolonged confinement without individualized review approaches the type of arbitrary detention the Due Process Clause forbids.

59. Second, delays attributable to the ordinary course of litigation or government administration cannot justify indefinite detention. Noncitizens may not be penalized for pursuing legitimate legal relief or exercising statutory rights.

60. Third, where removal is not imminent and proceedings remain ongoing, continued categorical detention becomes increasingly disconnected from its purported regulatory purpose. Under these factors, due process requires a prompt individualized bond hearing.

**ADDITIONAL NINTH CIRCUIT DISTRICT COURT AUTHORITY SUPPORTS INDIVIDUALIZED BOND HEARINGS**

61. District courts throughout the Ninth Circuit have likewise recognized that prolonged immigration detention without meaningful individualized review raises serious constitutional concerns and have ordered bond hearings as a remedy. See, e.g., *Hernandez v. Sessions*, 2018 WL 6071237 (C.D. Cal. 2018) (requiring constitutionally adequate bond procedures in immigration detention); *Padilla v. ICE*, 387 F. Supp. 3d 1219 (W.D. Wash. 2019) (holding that due process requires individualized custody determinations in civil immigration detention); *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019) (granting habeas relief and ordering a bond hearing after prolonged detention); *Gonzalez v. Bonnar*, 2019 WL 330906 (N.D. Cal. 2019) (finding that extended immigration detention without an individualized hearing implicates due process).

62. These cases reflect a consistent regional consensus that categorical detention schemes must yield to individualized constitutional review when detention becomes prolonged.

**RECENT FEDERAL DISTRICT COURT DECISIONS IN THIS DISTRICT REJECT DHS'S POSITION AND REQUIRE INDIVIDUALIZED HEARINGS**

63. The same federal district has squarely rejected DHS's reliance on categorical detention authority under materially indistinguishable circumstances. These courts ordered either immediate release or prompt individualized bond hearings.

A. *Crispin M.C. v. Noem* (E.D. Cal. Jan. 8, 2026)

64. In *Crispin M.C. v. Noem*, No. 1:25-CV-01487-KES-HBK, 2026 WL 70553 (E.D. Cal. Jan. 8, 2026), the court held that prolonged immigration detention without an individualized hearing violated due process and rejected the government's jurisdictional arguments.

B. *Lepe v. Andrews* (E.D. Cal. Sept. 23, 2025)

65. In *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025), the court ordered relief where DHS relied on statutory detention provisions to deny a custody hearing.

C. *Selis Tinoco v. Noem* (E.D. Cal. Dec. 14, 2025)

66. *Selis Tinoco v. Noem*, No. 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025), required an individualized hearing and stressed that procedural due process cannot be suspended by statutory labeling.

D. *D.L.C. v. Wofford* (E.D. Cal. Jan. 5, 2026)

67. In *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026), the court reaffirmed that prolonged detention without individualized review is constitutionally suspect.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the INA

68. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

69. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

70. The application of § 1225(b)(2) to Petitioner unlawfully mandates her continued detention and violates the INA.

71.

**<u>COUNT II</u>**

**Violation of Due Process**

72. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

73. The government may not deprive a person of life, liberty, or property without due process of law, U.S. Constitution Amendment V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

74. Petitioner has a fundamental interest in liberty and being free from official restraint.

75. The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates he right to due process.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

a. Assume jurisdiction over this matter;

b. Issue a writ of habeas corpus requiring that Respondents release Petitioner or provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within 14 days;

c. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

d. Grant any other and further relief that this Court deems just and proper.

DATED this ____14___ of AUGUST, 2026.

Law Offices of Andy Miri

*Attorneys for Petitioner*

VERIFICATION

I, JOSE LOPEZ GOMEZ in my individual capacity, declare under penalty of perjury that I have read the foregoing Petition, that it is true and correct to the best of my own knowledge and belief, except as to those matters stated to be on information and belief, and as to those things, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Dated: AUGUST 14 __, 2026

____________________________________

JOSE LOPEZ GOMEZ